My name is Adrienne Sloan. I'm an attorney with the Office of the State Appellate Defender and I'm here on behalf of Antron Williams. Antron Williams' car was searched based on an alert from an unreliable drug dog. The dog was taught that he would get his treat every time he alerted even if that alert was wrong and there were not drugs in the car. The dog who searched Antron Williams' car was trained to be a pretext for probable cause. For this court to uphold a search based on this dog's alert would be a cosign in egregious infringement upon Mr. Williams' Fourth Amendment and Illinois constitutional rights. The law in Illinois is that a narcotics dog must be well trained and reliable for his alert to constitute probable cause. And under Florida v. Harris, the question is whether all the facts surrounding the dog's alert viewed through the lens of common sense would make a reasonably prudent person think their search would reveal contraband or evidence of a crime. The evidence shows that this was not the case here. Aside from Officer York's testimony that the dog was rewarded for alerting rather than for detecting drugs, the other evidence presented doesn't do much to indicate the dog's reliability. Let me stop you for a second. Wasn't there testimony from Detective York or Deputy York that the dog was, his continual training was such that prevented him from being rewarded for false indications? So what he testified to was that the dog got his treat every time he made an alert, not every time that he correctly detected drugs. The problem with that is, he's getting an alert for alerting even if that alert is wrong. Even if there's no, I'm sorry, he's getting a treat for alerting even if that alert is wrong, meaning even if there's no drugs in the car, he's still getting his treat, which induces him to give an alert for drugs at every single traffic stop because that's how he gets his reward. He doesn't get it for being correct. He does it for making that alert. And on the flip side, if he does not alert, even if there's no drugs in the car, he doesn't get his reward. So he's being conditioned to alert, not to correctly identify the presence of drugs. That's the problem. So I believe your brief is pretty critical of the lack of testimony regarding the level of training that the dog had received, but I thought that Exhibit 7, from the PETA's Exhibit 7, was a detailed training summary regarding that deputy and the canine unit. So the training summary was presented by the state at the suppression hearing. The problem is the dog was done with his formal training, had been for a couple of months at the time of this search. And if the officer is going out into the field and continuing to function in the way that he gives the dog the treat every single time he alerts, it's effectively untraining him. So even if those training materials show that maybe in the case that he's still a reliable dog, when this is how he's being used. Does he have any kind of expert testimony on dog training, that that type of training was improper? So again, under Florida v. Harris, we're supposed to view it through the lens of common sense. And what common sense tells us is that he gets his treat every single time he says there's drugs in the car. Not every single time there is drugs in the car. That's a or that he's even trying to accurately detect drugs. It shows that he's trying, you know, he's a dog. He's trying to get his treat. And how he gets his treat is every single time he alerts. Not every... But the problem is that there was testimony from Deputy York that said that his continual training was... Prevents that from happening. And there's also a record of almost 380 hours of training that they went through. And the dog was certified. So... And in this case he found drugs. I mean, his alert, there was drugs. So it wasn't a false alert. I understand what you're saying. Right. So I understand that. It was an alert and it was drugs. In this case he found drugs. Yes, Your Honor. That said... You have a lot of cases. Do you have any other instances where a K-9 unit Lucien falsely alerted? Well, we do have the testimony from his handler, York, that he did false alert both in training and in the real world situations. The other problem is, although we... The state presented training materials. That's true. And they stated that he had taken and passed the course. But it didn't indicate how accurate the dog was during training or even what the minimum accuracy requirements were. And also, Detective York had trouble answering questions about the dog's accuracy level. Or he had trouble even giving estimates. And again, while he couldn't estimate his percent of accuracy in the field, he did admit that he falsely alerted sometimes, both in training and in the real world. So, given all of this, the training materials that were presented by the state don't do much to rebut the common sense assumption that we should make that if the way that this dog functions in the field is to give an alert at every single... You know, his good behavior is giving an alert. His good behavior is not detecting drugs. His bad behavior is not giving an alert. I think it's really pretty simple. The dog, while he was accurate in this situation, he doesn't even really know what being accurate is. He just knows that I need to alert and then I'll get my treat. And I think it's a significant problem because it's almost as if the dog functions as a work ground to get into people's cars without a warrant. Right. Now, I understand your point on that. However, I still come back to the fact that the deputy testified that his continual ongoing training was designed to eliminate the false responses. But he also testified that his continual ongoing training was to give the dog a tennis ball every single time he alerts, even if that alert is wrong. He specifically admitted that even if the alert was wrong... So there was conflicting testimony from the deputy. Yes. But he said that he doesn't... Well, there's no... The continued training was to stop him from false alerts. He would not get his tennis ball. And then he said, like you said, he also said, well, I train him so that he gets tennis ball all the time. Again, this is... When he makes an indication. This is where the common sense standard... Whose group? That's Gloria B. Harris, the United States Supreme Court. Who is the party that should make that determination of what's credible and what's not in that situation? Is that the trial court? Is that the entire fact? Is that the appellate court? What's our burden? So it's a dual standard of review in this instance. So this court can review the law to no vote and the facts under a manifest way that the evidence... So this would be a manifest? I believe so. Yes, Your Honor. I see that I'm close out of time. Keep going. Keep going? Okay. So on this issue, we would ask that this court not tell the police that they can train their dog to give an alert at every traffic stop instead of training their dog to accurately detect drugs or instead of getting a warrant. So we would ask that this court reverse the lower court's denial of the defense motion to suppress. I'd love to move on to issue three of my brief if possible, which is about Officer Ernst not being excluded from the courtroom during trial. So again, during Mr. Williams' jury trial, the key state's witness, Officer Ernst, was denied from the court order excluding witnesses and was allowed to sit with the prosecutor at counsel table. His position at counsel table allowed the state to bolster his credibility and his non-exclusion allowed him to change his testimony to make the state's case more credible. All of this culminated when the state called Ernst in rebuttal and asked him about whether the defense witness testified truthfully or not, which inflated the importance of Ernst's view of events in the eyes of the jury and elevated him above all of the other witnesses. His non-exclusion and his position at counsel table deprived Mr. Williams of the fair trial. It's well established that a motion to exclude is one of the most effective ways to prevent fabrication and that should not ordinarily be denied. And here, there was no sound basis on the record for allowing Ernst to remain in court. The judge's justification, which was local practice, shows that he didn't exercise his discretion in making this decision, but that he routinely or always allows officers to remain in the courtroom and sit at counsel table without justification. The impression that this gave the jurors was highly prejudicial. Officer Ernst is supposed to be treated as any other witness, but his position next to the prosecutor, and that began even before jury selection, allowed the jury to infer that he was more important or more credible than any of the other witnesses. His position also gave him the unique opportunity to comment on the other witnesses' testimony, which again, it necessarily gives the impression that he had some greater authority than the other witnesses. Ernst was called in rebuttal and he basically cleaned up the state's case. He was allowed to testify that the other witnesses were lying, that the co-defendant, Sam, was lying when he said he was harassed by the police, that Antron was not telling the truth when he said his phone was taken, and that he hadn't been complaining about his handcuffs. He couldn't have said any of this if he wasn't in the courtroom. But most importantly, I think, is that his presence at all at counsel table meant that the jurors really did view him as more credible and more important than any of the other witnesses. The trial court should not have relied upon local practice to accept the officer, and his lack of discretion means that Mr. Williams should receive him in trial. Ordinarily, if a witness testifies that some other witnesses were lying or untruthful, that's subject to an objection. That's the province of the jury where objections end. I apologize we have so many cases now. The cases run together. I can't recall. Were there objections made when the officer testified that some of the witness was untruthful or not? So at the beginning, when defense counsel made a motion to exclude witnesses, at that time the trial court said, accept officer Ernst due to local practice. I think it would be hard to ask defense counsel to object to this because it seemed like this was something that the judge I don't mean objecting to him being at the table, but I mean if he testified in rebuttal, if he says in rebuttal. He didn't object at that time either. And we did argue this issue in the alternative as ineffective assistance of counsel claims for both not objecting at the outset and not objecting when he was called in rebuttal and allowed to comment on the other witness's testimony. But I think really at its core this is a trial court error because the trial court is not exercising his discretion or having any sound reason to allow this officer to remain in court. And he's going against one of the really most important trial practices of excluding witnesses and he's not doing so for any reasonable reason that we can see on the record. Thank you. Your time is up. So if you want to just close real quick and then you'll have time on the clock. Absolutely. So we would just ask that this court either reverse Mr. Williams' conviction as outright pursuant to argument one, reverse his conspiracy conviction and remand for a new trial on the remaining counts pursuant to argument two, remand for a new trial on all of the charges pursuant to argument three, or remand for a new sentencing hearing or vacate his conspiracy conviction and remand for a new sentencing hearing. Thank you. You'll have time on the clock. Counselor, whenever you're ready. Good morning, Your Honors. Counsel, may it please the court. My name is Miles Kelleher on behalf of the people. The Illinois Supreme Court has held that the use of a well-trained dog sniffing dog to detect the presence of narcotics is an acceptable method to establish probable cause to search a vehicle. And that's exactly what happened in this case. There was some sort of reference in the opening statement about the dog being certified. What does that mean exactly? Who certifies or what? Is there a certificate or how is that disclosed to the court or to the jury? Yes. Exhibit 6, Your Honor, was a certificate that Detective York and Musian, the dog in this case, they worked as a team, had completed a drug detection course and also a test. And in addition, there were other records in this, other records of the training documents that this court has already noted. Exhibit 5. Is the trial court required to accept that certification or is the trial court supposed to conduct its own inquiry as to what that means? In a probable cause determination, it's a totality of the circumstances situation. So the court considered Deputy York's testimony as well as the documents that were provided by the state and admitted in the evidence. And those included the daily training reports. There were actually 30 separate documents. Each day the dog was trained approximately eight hours a day with Deputy York. Also, Exhibit 7 was a detailed summary of Detective York's and Musian's training at the Canine Academy. And as this court noted, there was a total of 377 hours of training that Detective York and Musian conducted together as a team. Now, defendant arguments mischaracterizes Detective York's testimony. And the defense arguments are refuted by the record. Detective York testified that Musian, that was the dog, was trained to alert only if he actually detected the odor of narcotics. And Musian was not trained to alert based on the presentation of a reward. Now, defense argument is that, well, you know, a dog would want a reward all the time. Musian would always alert because he wanted the tennis ball. But that's refuted by the record. And also, Detective York testified there were times when Musian did not alert and he was sent back to the vehicle. So, again, that's another indication that refutes the argument. If there were times when Musian didn't alert and was sent back to the record, that means he was doing his job. He didn't just want the tennis ball. He didn't alert because he didn't detect the presence of narcotics. In other words, what you're saying is that the testimony was actually that the dog was given the tennis ball for completing his duty, regardless of what that duty was. If he alerted to drugs or he did not alert to drugs, if he did the sweep, he did follow the commands that the officer was giving him, then he would be rewarded with the tennis ball for doing his job, not for, as you said, alerting every time. Yes, Your Honor. And there was some testimony that there were certain occasions where a drug detection dog would alert and drugs weren't found. But that does not automatically mean that the alert was improper. It's just that some drug traffickers are so sophisticated at hiding drugs in the vehicle that the officers didn't find them or they were concealed on one of the occupants of the vehicle. The police don't rip apart every vehicle every time they search a vehicle. They do a reasonable search. And there are times where a drug will alert and drugs simply won't be found. That doesn't mean that the alert was wrong, though. And Deputy York explained that situation. And also, there was some argument that also mischaracterizes Detective York's testimony regarding the defense alleged that Lucien only received a tennis ball for alerting because not alerting, even when nothing was present, was bad behavior. But that's not the behavior that Deputy York was talking about. If you look at his testimony as a whole, he was talking about a situation where it would only be bad behavior if drugs were present and then Lucien failed to alert. But that's exactly why Lucien underwent 377 hours of training so that that situation wouldn't occur. And in this case, Lucien did exactly what he was trained to do. Detective York and Lucien were requested to come to the scene. Lucien conducted an open-air search of the vehicle and alerted to the presence of drugs. Lucien was trained to detect cocaine, heroin, and methamphetamine. And upon the alert, the officers had probable cause to search. And once they searched the vehicle, they recovered methamphetamine, one of the substances that Lucien was trained to alert for. So as this court mentioned, it's defendant's burden to present evidence that the dog was unreliable. And the defendant has failed to do that in this case. Their argument is basically speculation. Well, maybe, you know, a dog would just want its tennis ball. That's not – that fails to rebut the presumption here that the dog was reliable because the dog had training. And also, this was the trial court's determination to make. Trial court made a factual determination, made credibility determination regarding Detective York's testimony. And this court owes deference to the trial court's factual findings. So when you look at the totality of the circumstances here, this was a well-trained canine dog that was well-trained to detect narcotics. That's exactly what the dog did in this case. And that gave the police probable cause to search the defendant's vehicle. Now, responding to the argument about Officer Ernst sitting at the prosecutor's table. How does rule – well, the Illinois Rule of Evidence 615 affect that officer's – or does it permit that officer to sit at the table? I mean, the second exception to that rule, courts have found that that applies in this situation. And there's a case of Chapman from the Fourth District that stated that it is well settled under Illinois law that a testifying police officer may present at trial – may be present at trial during an eyewitness's testimony and sit at the prosecutor's table with counsel. And this court, in the case of Taylor, followed that law, followed that precedent, and held that a trial court did not abuse its discretion in allowing the lead detective to remain at the prosecutor's table during trial. What about opposing counsel's argument that it's one thing to use your discretion, it's another when the judge says local practice is that it's always allowed and so I'm allowing it. There's no showing of discretion in that instance, is there? Well, Your Honor, in this situation, counsel didn't make any objection, remained silent. So counsel – the defense was free to, you know, raise an objection here. Maybe there were unique circumstances that the judge could have considered here. But counsel remained silent. So this is tantamount to invited error. Counsel can't agree to proceed in one method, then come back on appeal and say, hey, you know, that was error. So if – the state submits it, there's no error here because case law supports this procedure. But even if there was error, it was invited error and also it was forfeited because the defense never raised an objection at trial so the trial court never had to – had an opportunity to hear any concerns that the defense may have had. And also there was no prejudice here because, you know, the defense tries to point out, you know, something about Officer Ernst not remembering if he allowed defendant to make a call during the traffic stop to discuss the car's registration. Well, the officer said he didn't remember. And in the great scheme of things here, that was a relatively point of little significance because at that point the dog had already alerted to the presence of drugs. The police had already searched the car, recovered the methamphetamine and the cannabis. So if there was any error there, it was harmless, it didn't affect the outcome of the case here. There's no reasonable probability that had Officer Ernst not testified in that manner, the outcome of this case would have been any difference. So in sum, the trial court didn't abuse its discretion by allowing Officer Ernst to sit at the prosecutor's table. I see I'm out of time. If there's no other questions. I have no other questions. Okay. I would just ask this court to affirm defendant's convictions and sentence. Thank you. Thank you very much. Ms. Long. Thank you. As for the dog alert, I'd just like to read from the record briefly if that's okay. Officer York was asked, so when he alerts whether or not it turns out to be a mistaken alert where nothing is found or whether or not it results in the finding of contraband, he's given a reward in the form of a tennis ball, correct? Yes, he's given a reward on indication. The question, regardless of the final outcome of the search, correct? Yes. However, if he does not alert, he does not get the reward, correct? Yes. So he's conditioned to alert to get his reward. Counsel is saying that the dog is doing what he's trained to do, but what he's trained to do is always alert. If I have a fire alarm in my house that goes off every single day and one day there's a fire, sure, the fire alarm might have been correct on that day, but is it a reliable fire alarm? No. And we need a reliable drug dog. That's what our Supreme Court requires in Florida v. Harris. Isn't there, and correct me if I'm wrong, because like Justice Wong said, we have a lot of cases and some of these kind of run together, but with regard to what you just said, aren't there instances where this dog does not alert to the presence of drugs and... And then he doesn't get his treat. And gets his treat. No, if he doesn't alert, he doesn't get his treat. If he does alert, he does get his treat. So the treat is tied to alerting. It's not tied to correctly finding drugs. I also briefly, on the second issue I argued, I think Rule 615 is very significant. In both Chapman and Taylor, this Court has found that the officer's presence was permissible because the judges exercised their discretion under that rule. Here, I believe it doesn't even say the word Rule 615 in the record. The judge simply stated it did it based on local practice. Also specifically in Chapman, it was found that the officer can sit there if there's not prejudice. And in neither Chapman nor Taylor did they call the officer in rebuttal, which is certainly prejudicial. Again, for these reasons, we'd ask that you reverse Mr. Williams' conviction or remand for a new trial. No questions. Thank you.  First of all, let me just point out, and I'm not sure perhaps you were informed of this, but for the record, Justice Cates is also a member of this panel for today's hearings, but is not available. And so she will be participating by reviewing the audio and discussing the matter with us before we reach a decision. So thank you both for your briefs and for your arguments here today. And the Court will take the matter into consideration and issue its ruling in due course.